IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

AVION LAWSON,

      Plaintiff,

v.                                        CASE NO. 5:15-cv-308-WTH-GRJ

S.J. GILLMAN, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      This matter is before the Court on Defendants Gillman and McCrary's Motion for Summary Judgment. (ECF No. 53.) Plaintiff has filed a response in opposition. (ECF No. 56.) The motion is therefore ripe for review. For the reasons discussed below, Defendants' motion for summary judgment should be granted in part and denied in part.

## I.  BACKGROUND

      Plaintiff, an inmate in the custody of the Florida Department of Corrections ("FDOC") at Santa Rosa Correctional Institution ("Santa Rosa CI"), initiated this case by filing a *pro se* complaint under 42 U.S.C. § 1983. Plaintiff then filed a first amended complaint ("Complaint") on October 27, 2016. (ECF No. 31.) In his Complaint, Plaintiff alleges Defendant Officer

S.J. Gillman ("Officer Gillman") and Defendant Officer K. McCrary ("Officer McCrary") used excessive force against Plaintiff in violation of Plaintiff's Eighth Amendment rights and retaliated against Plaintiff for filing grievances in violation of Plaintiff's First Amendment rights.

Plaintiff's claims arise from an incident that allegedly occurred while Plaintiff was confined at Northwest Florida Reception Center ("NWFRC"). Plaintiff says Defendants viciously beat Plaintiff without penal justification on February 6, 2015. Plaintiff claims Defendants threatened to beat Plaintiff again if he wrote a grievance. Afterwards, Defendants allegedly told Plaintiff they have friends at Santa Rosa CI who would deal with Plaintiff for promising to file a lawsuit against Defendants. Plaintiff further alleges that the warden at NWFRC does not punish officers for their abusive conduct towards inmates because he maintains an "code of silence."[1]

Defendants argue, however, that the undisputed evidence demonstrates they are entitled to summary judgment under Fed. R. Civ. P. 56. (ECF No. 53.) Defendants have filed evidence supporting their motion,

---

[1] Plaintiff's Complaint also brings claims against Defendant Warden Leavins pertaining to his alleged policy, which will be addressed via separate report and recommendation.

including but not limited to Defendants' declarations made under penalty of perjury, copies of Plaintiff's medical records, and excerpts of Plaintiff's deposition. (ECF Nos. 53-1, 53-2, 53-3, 53-4, 53-5, 55-1, 55-2.)[2]

Plaintiff has filed evidence in response, including but not limited to copies of sick call requests, affidavits from other inmates, and what Plaintiff purports to be his affidavit. (ECF No. 56.) Plaintiff's affidavit, however, does not attest to the facts of this case and is instead merely legal argument. (*Id.* at 68–69.) Furthermore, Plaintiff's response memorandum in opposition to Defendant's motion for summary judgment is not signed under penalty of perjury. As such, the Court may not consider the factual allegations asserted within the response memorandum when ruling on the motion for summary judgment. *See, e.g., Henderson v. Cherry*, No. 5:08cv283/RS/EMT,  2010 WL 1257487, at *1 n.2 (N.D. Fla. Mar. 16, 2010) (declining to consider plaintiff's response to defendant's motion for summary judgment as evidence because the response was not made under penalty of perjury).

Plaintiff's Complaint, on the other hand,—which was signed under penalty of perjury—is properly treated by the Court like a sworn affidavit for

---

[2] Defendants filed their declarations on May 17, 2017. (ECF No. 55.) The Court considers them to be timely filed.

summary judgment purposes. *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[T]his Court has recognized that facts alleged in an inmate's sworn pleading are sufficient [to defeat a properly supported motion for summary judgment] and that a separate affidavit is not necessary.").

## II.  EVIDENCE

### *Pre-Assault*

Plaintiff injured his back playing basketball in 2011. (ECF No. 53-3 at 12 ("MR").) He then began having other back issues in October 2014 after he was extracted from his cell. (ECF No. 53-1 at 18:5–25, 19:1–10 ("Pl. Dep.").) Plaintiff continued to complain of lower back pain in November 2014 and January 2015, for which he was provided Ibuprofen. (MR at 8–11.) Plaintiff also complained of jaw pain in January 2015. (*Id.* at 10.) Then on February 5, 2015, Plaintiff submitted a sick-call request complaining of back pain, left shin, knee, and shoulder issues. (*Id.* at 14.) Plaintiff admits he may have suffered a shin injury prior to February 6, 2015. (Pl. Dep. at 64:1–9.)

### *The Assault*

Defendants escorted Plaintiff to medical on February 6, 2015. (ECF No. 55-1 ¶ 2 ("Gillman Dec."); ECF No. 55-2 ¶ 2 ("McCrary Dec."); ECF No.

31 at 7 ("Compl.").)[3] Plaintiff says that on the way, Defendants brought Plaintiff to a secluded area behind the dorm and viciously beat Plaintiff without penal justification. (Compl. at 7.) According to Plaintiff, Defendants punched Plaintiff in the face and ribs, called Plaintiff derogatory names, and forcefully shoved Plaintiff while he was shackled. (*Id.*) During the beating, Officer Gillman allegedly told Plaintiff he should kill Plaintiff. (*Id.*) This abuse exacerbated Plaintiff's prior back and shin injuries, caused lacerations to Plaintiff's heels from the shackles, and caused Plaintiff mental anguish and suffering. (*Id.*) Plaintiff says Defendants threatened to beat Plaintiff again if he filed a grievance about the incident. (*Id.*)

Defendants, however, aver that no use of force or assault of any kind occurred while they were escorting Plaintiff to medical on February 6, 2015. (Gillman Dec. ¶ 2; McCrary Dec. ¶ 2.) Defendants claim that Plaintiff's allegations about the assault are "completely untrue." (*Id.*)

Defendants then brought Plaintiff to medical as scheduled. (Pl. Dep. at 44:1–14.) The attending physician, Dr. Ladele, did not acknowledge Plaintiff's injuries. (*Id.* at 46:8–25, 47:1–15.) Plaintiff also did not say anything about having just been assaulted for several reasons. For

---

[3] Officer Gillman and Officer McCrary's declarations were made under penalty of perjury.

starters, Defendants—who had just threatened to beat Plaintiff again if he reported anything—were standing right outside the door. (Id. at 44:18–23.) Plaintiff didn't advise Dr. Ladele of what had happened because he thought Defendants would assault him again if he did. (*Id.* at 46:8–10.) Plaintiff also did not mention the assault because of NWFRC's "code of silence." (*Id.* at 47:13–15.) According to Plaintiff, Warden Leavins, maintains a "code of silence" at NWFRC, whereby officers are not punished for their abusive conduct towards inmates. (Compl. at 7–8.) Thus, because Dr. Ladele completely ignored Plaintiff's cut lip, bruised eyes, and cut ankles, Plaintiff did not bring them up to Dr. Ladele. (Pl. Dep. 45:22–25, 46:1–3.)

### *Post-Assault*

At some point after February 6, 2015, Defendants also threatened Plaintiff by telling him they have friends at Santa Rosa CI (the institution where Plaintiff was to be transferred), who would deal with Plaintiff for promising to file a lawsuit against Defendants. (Compl. at 7.)

Despite Defendants' threats, Plaintiff submitted a sick-call request on February 8, 2015, in which he reported being beaten by Defendants on February 6, 2015, behind confinement on the way to medical. (ECF No. 56 at 45 ("Pl. Resp.").) Plaintiff reported suffering eye swelling, a busted lip, injury to his back, and a dislocated jaw bone from this beating. (*Id.* at 45.)

Then on February 16, 2015, Plaintiff submitted a sick-call request for a bottom bunk pass and soft shoe pass because an x-ray of his left knee and shin revealed fluid in his knee between the joint and a torn ligament, which resulted from staff abuse on January 5, 2015. (MR at 16.)

Plaintiff did not further report the February 6, 2015 assault, however, until February 18, 2015, when he filed an informal grievance with the warden. (Compl. at 7; ECF No. 53-5 at 1 ("Grievance"); Pl. Dep. at 47:16–19.)

Several days later Plaintiff submitted another sick-call request inquiring about the status of his bottom bunk pass, stating,

> the x-ray doctor confirmed my left knee ligament has fluid in my knee that shouldn't be there and that the ligament is torn as I don't have normal motion in my knee which hurts a lot and my left leg shin was re-injured as well d[ue] to the abuse [on] 1-5-15 which causes my left and feet [to] go numb causing shocking pain daily.

(MR at 15.)

On February 24, 2015, Plaintiff was seen by medical for a post-use-of-force examination regarding chemical agents. (*Id.* at 1–2.) No injuries were noted. (*Id.*)

Sometime in late February 2015, another inmate—Ariel M. Thomas—while sitting on the bench by the Captain's office waiting to see

the legal mail officer heard Officer Gillman tell Sergeant Rainey and Sergeant Spooner "about how he and Officer McCrary beat the shit out of inmate Lawson while he was in restraints and told him they would kill him if he told." (Pl. Resp. at 61–62.)[4]

Plaintiff was transferred to Santa Rosa CI on February 26, 2015. (*Id.* at 5.) At the time, Plaintiff was not being treated for medical problems. (*Id.*) Later that day Plaintiff underwent a pre-special housing health evaluation at Santa Rosa CI, at which time Plaintiff had no current medical complaints. (*Id.* at 3.) Plaintiff was then examined by medical a second time that day after being brought to the dorm via restraint chair. (*Id.* at 6.) Plaintiff denied any injuries. (*Id.* at 6–7.) Likewise, no injuries were noted. (*Id.*)

The next day, February 27, 2015, Plaintiff submitted another sick-call request in which he asked for a medication renewal for the injuries to his back, neck, and shin. (Pl. Resp. at 46.) Plaintiff also reported being threatened by medical the day before that they would have Plaintiff beaten if he reported anything. (*Id.*)

On March 5, 2015, Officer Rightenburg filed an incident report in light of Plaintiff's informal grievance pertaining to the assault that allegedly

---

[4] Mr. Thomas' affidavit is signed under penalty of perjury.

occurred on February 6, 2015. (Grievance at 2; ECF No. 53-4 at 1 ("IR").)

The incident was described as follows:

> Inmate Lawson, Avion . . . reports on 2/6/15 between the hours
> of 9:50 a.m. and 10:45 a.m. Officer Gillman (Stephen) and
> Officer McCrary (Kyle) punched him in the back and ribs
> several times and stepped on the leg restraints making the
> chains cut the back of his ankles while calling him a snitch and
> writ writer as reprisal tactics. Inmate alle[]ges all of this
> occurred on the blind side of H and G dorm buildings while
> being escorted to medical. He further alle[]ges that Officer Hall
> (James) and Ms. Davis (Christy) ARNP made threats of reprisal
> towards him while in medical.

(IR at 1–2.) There were no injuries noted nor was there a fixed wing video

for evidence. (*Id.*)

Officer Rightenburg responded to Plaintiff's informal grievance,

informing Plaintiff that the issue of his complaint was referred to the Office

of the Inspector General for appropriate action. (*Id.* at 2; Grievance at 1–2.)

The response noted, however, that the referral to the Office of the

Inspector General did not constitute substantiation of Plaintiff's allegations.

(Grievance at 2.)

Albert Carl Maier, Senior Physician for the FDOC in the Central

Office, reviewed Plaintiff's medical records and attests that there is nothing

in Plaintiff's file to support any physical assault on February 6, 2015. (ECF

No. 53-2 ¶¶ 1–2 ("Maier Dec.").)[5]

Plaintiff says he was later threatened by Sergeant Godfrey that he was going to have all of Plaintiff's bones broken and break Plaintiff's jaw because Plaintiff wanted to file a lawsuit against Defendants. (Compl. at 9.) Sergeant Godfrey also repeatedly threatened to kill Plaintiff. (*Id.*) These threats occurred until Plaintiff filed his amended complaint. (*Id.*) Plaintiff says the threats were "causally connected to the threats of [Officer] Gillman and [Officer McCrary] promising to have him 'dealt with.'" (*Id.*)

## III.  STANDARD OF REVIEW

The entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." *Samples on Behalf of Samples v. Atlanta,* 846 F.2d 1328, 1330 (11th Cir. 1988). But, "when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

---

[5] Dr. Maier's unsworn declaration was made under penalty of perjury.

that version of the facts for purposes of ruling on a motion for summary judgment." *Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) (internal quotations and citations omitted); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986) (to defeat summary judgment "there must be evidence on which the jury could reasonably find for the plaintiff") "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." *Brown v. City of Clewiston,* 848 F.2d 1534, 1540 n. 12 (11th Cir.1988) ("The summary judgment standard requires that we resolve all reasonable doubts in favor of the non-moving party, but it does not require us to resolve all doubts in such a manner.").

As the Supreme Court held in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." *Rollins v. Techsouth*, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Castleberry v.*

*Goldome Credit Corp.*, 408 F.3d 773, 785–86 (11th Cir. 2005). Conclusory allegations based on subjective beliefs are insufficient to create a genuine issue of material fact. *See, e.g., Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

## IV.  DISCUSSION

Defendants argue they are entitled to summary judgment as a matter of law because Plaintiff has failed to establish a constitutional violation and that Plaintiff is nonetheless not entitled to compensatory or punitive damages. Defendants also argue that the Eleventh Amendment bars Plaintiff's claims against them in their official capacities and that they are entitled to qualified immunity with respect to Plaintiff's claims against them in their individual capacities.

### A.    *Eleventh Amendment Immunity*

To the extent that Plaintiffs claims are against Defendants in their official capacities, Defendants are entitled to Eleventh Amendment immunity. A suit against a state official in his official capacity is a suit against the State itself. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment prohibits a suit against the State absent the State's consent to the suit. *Alabama v. Puch*, 438 U.S. 781, 782 (1978). Florida has not waived its sovereign immunity or consented to be

sued in damage suits brought under § 1983. *See* Fla. Stat. § 768.28(18);

*Gamble v. Fla. Dep't of Health & Rehabilitative Servs.*, 779 F.2d 1509,

1515 (11th Cir. 1986). Accordingly, to the extent that Plaintiff's claims are

interpreted as bringing suit for damages against Defendants in their official

capacities, Defendants are entitled to summary judgment.

## B.    *Cruel and Unusual Punishment*

Disputed issues of material fact preclude the entry of summary

judgment on Plaintiff's Eighth Amendment claims against Defendants in

their individual capacities. The Eighth Amendment provides the right to be

free from cruel and unusual punishment. U.S. Const. amend. VIII. The use

of excessive physical force against a prisoner may constitute cruel and

unusual punishment in violation of the Eighth Amendment. *Hudson v.*

*McMillian*, 503 U.S. 1, 4 (1992). "In Eighth Amendment excessive force

cases, the 'core judicial inquiry' is 'not whether a certain quantum of injury

was sustained, but rather whether force was applied in a good-faith effort

to maintain or restore discipline, or maliciously and sadistically to cause

harm.'" *Bowden v. Stokely*, 576 F. App'x 951, 953 (11th Cir. 2014) (quoting

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). Five factors should be

considered in determining whether force was used sadistically and

maliciously:

(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them.

*Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations and citations omitted).

"When we consider whether the jailers' use of force was excessive, we must 'give a wide range of deference to prison officials acting to preserve discipline and security.'" *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 1990) (quoting *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990)). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533. "Eighth Amendment claims based on *de minimis* uses of physical force by prison guards are not cognizable unless they involve 'force that is repugnant to the conscience of mankind.'" *Johnson v. Moody*, 206 F. App'x 880, 884–85 (11th Cir. 2006) (quoting *Hudson*, 503 U.S. at 9–10).

Plaintiff's excessive force claim presents a classic example of two disparate versions of events. Plaintiff says—under penalty of perjury—that

the assault occurred.[6] Similarly, Mr. Thomas, another inmate, says—under penalty of perjury—that he heard Officer Gilman tell two other sergeants that he and Officer McCrary beat up Plaintiff and threatened to kill Plaintiff if he reported anything.[7]

On the other hand, Defendants say—also under penalty of perjury—that the assault did not occur. Clearly, someone has provided false testimony under penalty of perjury because both versions of events cannot be true.[8] Notably, this is not a situation where Defendants admit force was used but argue that the force was justified to preserve discipline or security. If the assault occurred and for no reason as Plaintiff says it did, a reasonable jury could find that force was used sadistically and maliciously. *See Wilkins*, 559 U.S. at 40 (concluding that to prevail, plaintiff would "have to prove not only that the assault actually occurred but also that it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline'").

Although Defendants focus on the lack of physical evidence to

---

[6] Although Plaintiff has filed affidavits from other inmates who attest that Plaintiff told them about the assault, those attestations are hearsay and therefore inadmissible.

[7] Mr. Thomas' attestation is not hearsay when offered against Officer Gillman. *See* Fed. R. Evid. 801(d)(2).

[8] Rest assured, assuming this case goes to trial, once the truth comes out anyone who provides perjured testimony will be referred for appropriate prosecution to the full extent of the law.

support Plaintiff's claim, Defendants ignore Plaintiff's own sworn

assertions, as well as Mr. Thomas' affidavit, which is essentially evidence

of an admission. This is not a case where other evidence clearly refutes

Plaintiff's claims. For example, Defendants notably did not provide

Plaintiff's medical record from his examination immediately following the

alleged assault., despite providing medical records from a later period. Nor

is there a declaration from the attending physician documenting that there

were no injuries. In short, Defendants have not submitted evidence to

refute Plaintiff's claim that he suffered a black eye, bloody lip, and cuts to

his ankles from the assault. That no injuries were noted on February 24,

2015—18 days after the alleged assault—does not mean a reasonable jury

could not conclude that the assault occurred.

Moreover, despite Defendants' assertion that Plaintiff did not report

the incident to anyone until he filed an informal grievance on February 18,

2015, Defendants failed to addressed the sick-call request Plaintiff

submitted on February 8, 2015, in which he reported being beaten by

Defendants.[9] Although a sick-call request is different from a grievance,

Plaintiff has nonetheless provided some evidence that he sought medical

---

[9] Plaintiff filed a copy of this sick-call request in his response to the motion for summary judgment. Defendants did not file a reply.

attention for the alleged injuries.[10]  And to the extent Defendants argue

Plaintiff did not advise Dr. Ladele of his injuries, Plaintiff says the institution

operates under a "code of silence," and that Defendants were standing

right outside the door after having threatened to beat Plaintiff again if he

reported anything. While Plaintiff may not have raised his alleged injuries

with Dr. Ladele at that time, and while Dr. Ladele may not have asked

Plaintiff about his injuries, these facts fail to refute Plaintiff's excessive

force claim.[11] It is not the Court's role to weigh the credibility of Plaintiff's

assertions. A reasonable jury could conclude that Defendants used

excessive force against Plaintiff in violation of Plaintiff's Eighth Amendment

rights.

Furthermore, the absence of a serious injury does not preclude

Plaintiff's excessive force claims. Under the PLRA, "[n]o federal civil action

---

[10] Plaintiff appears to attribute Defendants not having this sick-call request to staff ripping up his sick-call slips. For example, in one of the inmate affidavits Plaintiff has filed from James F. Barron, Mr. Barron attests that while at medical one morning he heard Nurse Davis tell another nurse, "don't worry about Lawson. He complains too much. Just keep ripping them up. He'll be ok." (Pl. Resp. at 59–60.) What Mr. Barron, a non-party, heard Nurse Davis, a non-party, say to another non-party, is however hearsay and is therefore inadmissible.

[11] Plaintiff says he suffered a swollen eye, a cut lip, cuts to the ankles, and jaw pain. A reasonable jury could conclude that Plaintiff's eye might not have been noticeably swollen at the time he saw Dr. Ladele because the alleged assault had taken place on the way to see Dr. Ladele. Similarly, a physician likely would not have been able to "see" jaw pain. Furthermore, a physician may not have seen cuts on Plaintiff's ankles depending on the focus of the visit and what Plaintiff was wearing at the time.

may be brought by a prisoner confined in a jail, prison, or other correctional

facility, for mental or emotional injury suffered while in custody without a

prior showing of physical injury." 42 U.S.C. § 1997e(e). "[T]he physical

injury must be more than de minimis, but need not be significant." *Harris v.*

*Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated*, 197 F.3d 1059,

*reinstated in relevant part*, 216 F.3d 970, 972 (11th Cir. 2000); *see*

*Thompson v. Sec'y, Fla. Dep't of Corrections*, 551 F. App'x 555, 557 n.3

(11th Cir. 2014) (noting that the Eleventh Circuit has not adopted a

definition of "de minimis," but acknowledging "one court has described it as

'a physical injury is an observable or diagnosable medical condition

requiring treatment by a medical care professional'") (quoting *Luong v.*

*Hatt*, 979 F. Supp. 481 (N.D. Tex. 1997).

In the Eleventh Circuit, "[t]he meaning of the phrase 'greater than de

minimis,' however, is far from clear." *Chatham v. Adcock*, 334 F. App'x

281, 284 (11th Cir. 2009); *compare Mann v. McNeil*, 360 F. App'x 31, 32

(11th Cir. 2010) (plaintiff's claims for compensatory and punitive damages

were barred by § 1997e(e) where plaintiff complained of vague injuries to

his back and scrapes and marks on his knees and legs), *and Quinlan v.*

*Personal Trans. Servs., Co.*, 329 F. App'x 246, 249 (11th Cir. 2009)

(pretrial detainee's complaints of headaches, difficulty breathing, temporary

chest pain, and lingering back pain were not greater than *de minimis* injuries), *with Jenkins v. Hutcheson*, No. 6:14-cv-81, 2016 WL 4496561, at *13 (S.D. Ga. June 22, 2016), *report and recommendation adopted*, 2016 WL 4491850, at *1–2 (S.D. Ga. Aug. 25, 2016) (denying summary judgment on plaintiff's excessive force claim where plaintiff said he suffered lacerations, bruising, swelling, migraines, and numbness in his hands because a reasonable jury could find the injuries to be more than *de minimis*), *and Cotney v. Bowers*, No. 2:03-cv-1181-WKW, 2006 WL 2772775, at *7 (M.D. Ala. Sept. 26, 2006) (plaintiff's testimony that he suffered bruises to his ribs from officer's use of force and that the bruises healed after several weeks without treatment surmounted PLRA's *de minimis* injury bar because plaintiff put forth evidence from which a jury could determine his physical injuries were more than de minimis). Discomfort does not equate to physical injury. *Dixon v. Toole*, 225 F. App'x 797, 799 (11th Cir. 2007). But, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins*, 559 U.S. at 37.

For starters, there is simply no evidence that Plaintiff suffered a dislocated jaw bone. And despite Plaintiff's back, shin, and jaw pain,

Plaintiff admits that he suffered from these injuries prior to the assault on February 6, 2015. Although Plaintiff says the assault made these injuries worse, there is simply no medical evidence to support a finding that his injuries worsened, or if they did, that they were exacerbated by the assault. Plaintiff's speculative beliefs are insufficient to create a genuine issue of material fact.

Nevertheless, Plaintiff says he suffered lacerations to his ankles—not merely from being shackled, but from being forcefully shoved from behind while shackled—swollen eyes, and a busted lip from the unprovoked assault. Despite the lack of medical evidence to support these assertions, whether the assault actually happened is a question for the jury. Although a close call, if the jury finds that the unprovoked assault happened as plaintiff says it did, a reasonable jury could also conclude that Plaintiff's lacerations, swollen eyes, and busted lip rise above the *de minimis* level. *See Goodwin v. Hatten*, No. 1:07-cv-00123-MP-AK, 2010 WL 750290, at *4–5 (N.D. Fla. Mar. 1, 2010) (denying summary judgment on excessive force claim where plaintiff's medical records corroborated his claim that he suffered rib pain and difficulty breathing following assault by prison guard because genuine issue of material fact existed as to whether the alleged assault occurred and whether plaintiff's injuries were more than de minimis

such that he may pursue a claim for mental or emotional injury in addition to his physical injuries).

Finally, Defendants are not entitled to qualified immunity on Plaintiff's excessive force claims at this juncture. "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To determine whether qualified immunity applies, a court must consider two factors: (1) whether the facts show that the officer's conduct violated a constitutional right; and (2) whether the right was clearly established. *Person v. Callahan*, 555 U.S. 223, 236 (2009).

As discussed, genuine disputes of material fact remain on Plaintiff's excessive force claim. An officer's malicious and sadistic use of physical force against a prisoner to cause harm clearly violates the prisoner's Eighth Amendment rights. Thus, if Plaintiff's version of facts proves true, qualified immunity likely will not shield Defendants from liability on Plaintiff's Eighth Amendment claims. Defendants are therefore not entitled to summary judgment on Plaintiff's excessive force claims.

## C.    Retaliation

Defendants are, however, entitled to summary judgment on Plaintiff's

retaliation claims. "The First Amendment forbids prison officials from

retaliating against prisoners for exercising the right of free speech." *Farrow*

*v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003). An inmate is considered to

be exercising his right of free speech when he complains to prison

administrators about the conditions of his confinement. *Smith v. Mosley*,

532 F.3d 1270, 1276 (11th Cir. 2008).

"An inmate may maintain a cause of action for retaliation under 42

U.S.C. § 1983 by showing that a prison official's actions were 'the result of

the inmate's having filed a grievance concerning the conditions of his

imprisonment.'" *O'Bryant v. Finch*, 637 F.3d 1207, 1212 (11th Cir. 2011)

(quoting *Farrow*, 320 F.3d at 1248).

> To prevail on a retaliation claim, the inmate must establish that:
> "(1) his speech was constitutionally protected; (2) the inmate
> suffered adverse action such that the official's allegedly
> retaliatory conduct would likely deter a person of ordinary
> firmness from engaging in such speech; and (3) there is a
> causal relationship between the retaliatory action (the
> disciplinary punishment) and the protected speech (the
> grievance)."

*Id.* (quoting *Smith*, 532 F.3d at 1276); *Bennett v. Hendrix*, 423 F.3d 1247,

1250 (11th Cir. 2005), *cert. denied*, 549 U.S. 809 (2006). "To establish

causation, the plaintiff must show that the defendant was 'subjectively motivated to discipline' the plaintiff for exercising his First Amendment rights." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

Plaintiff has failed to demonstrate that Defendants retaliated against him in violation of the First Amendment. To be clear, Plaintiff's retaliation claim is not that the assault itself occurred as retaliation for something. Plaintiff's Complaint fails to mention any prior grievances, complaints, or anything that could be liberally construed as him exercising a First Amendment right prior to February 6, 2015. While Plaintiff argues in his response that the reason the assault occurred in the first place was because he had previously filed grievances and because his mother had called the Inspector General's Office and the Central Bureau, (ECF No. 56 at 13), Plaintiff's response was not made under penalty of perjury. Thus, there is no evidence in the record before the Court upon which a reasonable jury could conclude that the assault occurred because Plaintiff filed prior grievances.[12]

Turning to the evidence before this Court, Plaintiff says Defendants threatened to beat him up if he filed a grievance about the incident. He also

---

[12] Plaintiff has also submitted several affidavits from other inmates who assert that Plaintiff was beat up because he filed grievances and is known as a "writ writer." This testimony, however, is inadmissible because it is nothing more than speculation and fails to establish any proper basis for personal knowledge.

says Defendants threatened to have him dealt with at Santa Rosa CI for promising to file a lawsuit against Defendants. There is no evidence, however, suggesting that Defendants took further action in retaliating against Plaintiff because he ultimately filed his grievance and the instant lawsuit. Notably, Defendants' alleged threat about filing a grievance was made before he filed his grievance. Likewise, Defendants made their alleged threat about having Plaintiff dealt with—which Plaintiff does not say Defendants made because he filed a grievance—before Plaintiff filed the instant lawsuit. Plaintiff has not established that Defendants took any retaliatory action against him for exercising his First Amendment rights.

Furthermore, even liberally construing Plaintiff's assertion that Sergeant Godfrey threatened Plaintiff *because* Plaintiff filed grievances and/or the instant lawsuit, Sergeant Godfrey is not a defendant in this case. Thus, Plaintiff's attempt to causally connect Sergeant Godfrey to Defendants' threat to have Plaintiff "dealt with" is nothing more than unsupported speculation, which is insufficient to create a genuine issue of material fact.

Two points of clarification are necessary however. First, with respect to Defendants' assertion that their alleged threats fail to rise to the level of a constitutional claim, Defendants conflate the Eighth Amendment with the

First Amendment. Defendants are correct that under the Eighth

Amendment verbal threats alone are generally insufficient to state a claim.

*See Hernandez v. Fla. Dep't of Corr.*, 281 F. App'x 862, 866 (11th Cir.

2008) (prisoner's allegations of verbal abuse and threats by prison officers

did not state an Eighth Amendment claim because the officers never

carried out the threats); *Robertson v. Plano*, 70 F.3d 21, 24 (5th Cir. 1995)

("[I]n the Eighth Amendment context, or circuit has recognized as a general

rule that mere threatening language and gestures of a custodial officer do

not . . . amount to constitutional violations."); *Johnson v. Glick*, 481 F.2d

1028, 1033 n.7 (2d Cir. 1973) (in an Eighth Amendment § 1983 case,

"mere words, however violent, are held not to amount to an assault"). But

under the First Amendment the question is not whether the threat was

actually carried out, "but whether the alleged threat itself was sufficient to

deter a person of ordinary firmness from exercising his First Amendment

rights." *Pittman v. Tucker*, 213 F. App'x 867, 871 (11th Cir. 2007); *see*

*Hoever v. Hampton*, No. 4:14cv273-WS/CAS, 2016 WL 3647596, at *3–4

(N.D. Fla. May 19, 2016) (noting that under the Eighth Amendment, threats

of physical harm are not actionable, but concluding that plaintiff alleged a

violation of his First Amendment rights where he complained to the warden

about conditions of his confinement and was threatened by defendant for

doing so).

Second, contrary to Defendants' assertion, Plaintiff's filing of a

grievance and the instant lawsuit do not necessarily defeat his First

Amendment claim. The Eleventh Circuit has explained,

> a plaintiff need not show that his own exercise of First
> Amendment rights have been chilled, but instead a plaintiff can
> establish an injury if he can show that the retaliatory acts are
> sufficiently adverse that a jury could find that the acts would
> chill a person of ordinary firmness from exercising his First
> Amendment rights.

*Pittman*, 213 F. App'x at 870 (citing *Hendrix*, 423 F.3d at 1254–55). The

question, therefore, is whether a defendant's threats (assuming the threats

were made) would chill a person of ordinary firmness from exercising his

First Amendment rights. That question is one for a jury to decide. *See id.* at

871 (district court erred in granting summary judgment to defendants on

plaintiff's retaliation claims because "a reasonable jury could interpret the

statements made by [defendants] to be threats of physical violence that

could deter a person of ordinary firmness from filing grievances").

Nonetheless, in this case Plaintiff has not submitted any evidence that

Defendants took any retaliatory action against Plaintiff because he

exercised his First Amendment rights. Accordingly, Plaintiff has failed to

demonstrate that Defendants retaliated against him in violation of the First

Amendment.

Furthermore, the undisputed evidence demonstrates Plaintiff is not entitled to compensatory or punitive damages on his retaliation claims. Plaintiff specifically requests compensatory and punitive damages. His Complaint does not request nominal damages, nor does his Complaint contain a request for anything that could be liberally construed as requesting nominal damages, such as a request for any and all relief the Court deems appropriate. There is no evidence that Plaintiff suffered any physical injury from any type of retaliatory act. Plaintiff is therefore not entitled to the relief he seeks. *See Hicks v. Ferrero*, 285 F. App'x 585, 587 (11th Cir. 2008) (prisoner could not recover compensatory damages on his First Amendment retaliation claim where prisoner failed to allege any physical injury, monetary loss, or other actual injury related to the retaliation claim).

Finally, even assuming Plaintiff had requested nominal damages in his Complaint, Defendants would still be entitled to qualified immunity from Plaintiff's First Amendment claims. There is no question that Defendants were acting within the scope of their discretionary authority as officers at NWFRC during the alleged retaliation. And as discussed, Plaintiff has failed to establish a retaliation claim. Defendants are therefore entitled to

qualified immunity. *See Person v. Callahan*, 555 U.S. 223, 236 (2009) (the

district court has discretion to determine in what order to address the two-

part test for determining entitlement to qualified immunity). Accordingly,

Defendants are entitled to summary judgment on Plaintiff's retaliation

claims against them in their individual capacities.

## V.  RECOMMENDATION

In light of the foregoing, it is respectfully **RECOMMENDED** that:

Defendant's Motion for Summary Judgment, ECF No. 53, should be **GRANTED** as to Plaintiff's official capacity claims against Defendants and as to Plaintiff's retaliation claims and **DENIED** as to Plaintiff's excessive force claims against Defendants in their individual capacities.

**IN CHAMBERS** at Gainesville, Florida, this 25th day of July 2017.

*s/ Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**